

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CANTER STRATEGIC WEALTH MANAGEMENT, LLC, | Case No.: 24-cv-2439-BJC-JLB |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 17, 18]** |
| v. | |
| MICHAEL BERNIER; LPL FINANCIAL, LLC; and DOES 1 to 10, inclusive, | |
| Defendants. | |

On December 23, 2024, Plaintiff Canter Strategic Wealth Management, LLC ("Canter") filed this action alleging misappropriation of trade secrets, breach of contract, and state law claims arising from an employment agreement. ECF No. 1. Pending before the Court are Motions to Dismiss the First Amended Complaint filed by Defendants' Michael Bernier ("Bernier") and LPL Financial, LLC ("LPL"). ECF Nos. 17, 18. Plaintiff opposed [ECF Nos. 23, 24], and Defendants filed Replies. ECF Nos. 25, 26. For the reasons below, the Defendants' Motions to Dismiss are **GRANTED** in part and **DENIED** in part.

1

## I.    Background

Plaintiff employed Defendant Bernier as a Senior Wealth Advisor from January 3, 2019, until October 23, 2024.  ECF No. 15 ¶ 26.  When his employment began, Bernier and Plaintiff entered into an Employment Agreement that specified all of his current clients would be transferred to Canter, where Bernier would continue to provide services to them. *Id.* ¶ 29. In order to do his work, Bernier regularly accessed various kinds of sensitive information pertaining to both his clients and Plaintiff's general business.  *Id.* ¶ 26-27. Seeking to protect information it considered sensitive, Plaintiff had Bernier sign a "Confidentiality, Non-Solicitation & Non-Disparagement Agreement" (the "Confidentiality Agreement") that was included in the Employment Agreement.  *Id.* ¶ 37. This agreement required Bernier

> (i) to treat all Confidential Information as strictly confidential; (ii) not to directly or indirectly *disclose, publish, communicate* or make available Confidential Information, or allow it to be disclosed, published, communicated or made available, in whole or part, to any entity or person whatsoever . . . ; and (iii) not to *access or use* any Confidential Information, and not to *copy* any documents, records, files, media or other resources containing any Confidential Information, or *remove* such documents, records, files, media or other resources from the premises or control of Canter, except as required in the performance of [Bernier's] authorized duties to Canter or with the prior consent of an authorized officer acting on behalf of Canter.

*Id.* ¶ 43(emphasis added). Bernier further "agree[d] and covenant[ed], during one year, to run consecutively, starting on the date of terminating, that [he] w[ould] not use any of Canter's trade secrets and/or confidential or proprietary information to directly or indirectly solicit the Clients of Canter, or to interrupt, disturb, or interfere with the relationships of Canter with its Clients." Bernier also agreed to a buyout provision under which Plaintiff would have the right of first refusal to purchase Bernier's client relationships to retain them as Plaintiff's clients when Bernier left the company.  *Id.* ¶ 31.

On October 23, 2024, Defendant Bernier resigned from his position at Canter and began employment with Defendant LPL.  *Id.* ¶ 54-55.  Following Bernier's departure, Plaintiff began an investigation into Bernier's activity logs within Plaintiff's computer

24-cv-2439-BJC-JLB

systems.    Plaintiff alleges it discovered that Bernier improperly accessed and copied Confidential and Proprietary Information ("CP Information") and Trade Secrets in violation of the Confidentiality Agreement.  *Id.* ¶ 63-64.  Plaintiff also alleges that Bernier deleted files containing CP Information and Trade Secrets, and Plaintiff has been unable to recover some of this information.  *Id.* ¶¶ 75, 229. Plaintiff alleges that Bernier used this information to solicit clients, and he harmed its reputation by intentionally manipulating client reports before he left.  *Id.* ¶ 95-99.

On December 23, 2024, Plaintiff filed its original Complaint with this Court.  ECF No. 1.  On February 7, 2025, both Defendants Bernier and LPL filed Motions to Dismiss.  ECF Nos. 11, 12.   On February 28, 2025, Plaintiff filed a First Amended Complaint ("FAC"), alleging the following claims based on the unauthorized access, copy, and use of its Trade Secrets and CP Information: Claim 1- misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA"); Claim 2- misappropriation of trade secrets under California's Uniform Trade Secrets Act, California Civil Code § 3426 ("CUTSA"); Claim 3- breach of contract; Claim 4 - engagement in unlawful, unfair, and fraudulent business acts in violation of California Business and Professions Code § 17200 ("Section 17200");   Claim 5- intentional interference with prospective economic advantage; Claim 6 - tortious interference with contractual relations;  Claim 7- breach of fiduciary duty; Claim 8- breach of the duty of loyalty; Claim 9- refusal to return stolen property in violation of California Penal Code § 496; Claim 10- unauthorized access to Defendant's digital data in violation of California Penal Code § 502; and Claim 11- conversion.  ECF No. 15.

On March 14, 2025, Defendants Bernier and LPL filed the present Motions to Dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging that the FAC fails to state a claim upon which relief can be granted.  ECF No. 17, 18. On April 18, 2025, Plaintiff filed Oppositions.  ECF Nos. 23, 24. On April 25, 2025, Defendants filed Replies.  ECF Nos. 25, 26.

//

24-cv-2439-BJC-JLB

## II.    Legal Standard

### A. Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 8(a)(2). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663-64. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If Plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." *Id.* at 570. The complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing the plausibility of a complaint on a motion to dismiss, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

### III. Analysis

Defendants contend the FAC must be dismissed for the following reasons: (1)

24-cv-2439-BJC-JLB

Plaintiff has not alleged a trade secret with sufficient particularity to support a claim under either DTSA or CUTSA; (2) the contract underlying the breach of contract claim is void under California Business and Professions Code § 16600 ("Section 16600") as an impermissible restraint on trade; (3) Plaintiff's non-trade secrets causes of action are preempted by CUTSA; (4) Plaintiff fails to plead causation for its non-trade secrets causes of action; (5) Plaintiff fails to allege intentional misconduct for its claims of tortious interference with contractual relations and intentional interference with prospective economic advantage; (6) Plaintiff's breach of loyalty claim arises out of Defendant's exercise of his right to secure alternative employment; and (7) Plaintiff fails to allege any wrongdoing against LPL. ECF Nos. 17-1, 18-1. Each argument is addressed in turn below.

### A. Misappropriation of Trade Secrets

Under either DTSA or CUTSA, a claim for trade secret misappropriation must allege: "(1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657-58 (9th Cir. 2020); *see also CleanFish, LLC v. Sims*, 2020 WL 1274991, at \*8 (N.D. Cal. Mar. 17, 2020) ("The elements of trade secret misappropriation under DTSA and CUTSA are essentially the same"). "[T]he definition of trade secret consists of three elements: (1) information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret." *InteliClear, LLC*, 978 F.3d at 657; 18 U.S.C. § 1839(3)(5); see also Cal. Civ. Code § 3426.1(d). In the complaint, a plaintiff must allege a trade secret with "sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012) (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968)).

Here, Plaintiff asserts that Bernier misappropriated Trade Secrets and CP Information in violation of DTSA and CUTSA. To determine whether Plaintiff has

24-cv-2439-BJC-JLB

satisfied the first element of the claim, the Court looks to the terms as defined by Plaintiff in the FAC. Trade Secrets are defined as:

> e customer [sic] profiles, client financial positions and planning strategies, portfolio models and formulations, client lists and corresponding contact information, investment profiles, tax planning analyses, client pricing and related data, and Canter's marketing, advertising and lead-generations strategies, each of which is sensitive and strategically valuable information that Canter goes to great lengths to protect and which, if disclosed to third parties (or a competitor like LPL), would cause substantial and irreparable harm to Canter.

FAC ECF No. 15 ¶ 5.  CP Information "includes, but is not limited to investment policy statements, external client strategy analyses, external client investment strategies and forecasts, client account statements, personal email correspondences, client documents received, client notes, retirement suitability forms, retirement checklists, and client tax documents." ECF No. 15 ¶ 4.  According to Plaintiff, "Canter maintains its CP Information and Trade Secrets in secure data repositories that are access-restricted, password-protected, and consistently monitored for improper intrusions or access." *Id.* ¶ 19.

The CP and Trade Secret definitions include several items alleged with sufficient particularity to allow Defendants to "ascertain at least the boundaries within which the secret lies." *Alta Devices, Inc. v. LG Electronics, Inc.*, 343 F.Supp. 3d 868, 881 (N.D.Cal. Oct. 17, 2018). For instance, included in the definition of Trade Secrets are "client financial positions and planning strategies, portfolio models and formulations" "investment profiles, tax planning analyses, client pricing and related data," which describe information specific to individual clients that would not be information generally known in the trade or by persons who are skilled in the trade. In addition, the Trade Secret definition includes "client lists and corresponding contact information," which at this stage in the pleadings is sufficient to state a protected category of information. S*ee Albert's Organics, Inc. v. Holzman*, 445 F.Supp. 3d 463 (N.D.Cal. Mar. 23, 2020)("Courts have frequently held that customer-related information qualifies as a trade secret, especially if a plaintiff has spent 'considerable time, effort, and resources,' in developing some of that information"); *see*

24-cv-2439-BJC-JLB

*also H.Q. Milton, Inc. v. Webste*r, 2017 WL 5625929, at *3 (N.D. Cal. Nov. 22, 2017) (finding "customer list and contact information, sales leads, customer interests, and [plaintiff's] proprietary pricing" constituted trade secrets).

Similarly, the CP Information definition includes "client account statements, personal email correspondences [sic], client documents received, client notes, retirement suitability forms, retirement checklists, and client tax documents," all of which are defined with sufficient particularity to put Defendant on notice of what is included. *See, e.g.*, *Nextdoor.Com v. Abhyanker*, 2013 WL 3802526, at *5-6 (N.D. Cal. July 19, 2013) (finding that even though some items were general, "the list as a whole provided sufficient specificity to give Defendants notice of [Plaintiff]'s allegations, at least at the pleading stage"). The FAC provides additional notice to Defendants regarding the scope of the claims by attaching specific dates for some of the acts of misappropriation, including that "client tax analyses" were stolen on October 11, 22, and 24, 2024. ECF No. 15 ¶ 66, 75.

Defendant contends that Plaintiff's list fails to provide reasonable notice as to the boundaries of Plaintiff's claim, citing *Masimo Corp. v. Apple*, 2020 WL 4037213 (C.D. Cal. June 25, 2020), *Emazing Lights LLC v. De Oca*, 2016 WL 3658945, at *2 (C.D. Cal. Jan. 7, 2016), and *Acrisure v. Socal Comm. Ins. Services,* 2019 WL 4137618 (C.D. Cal. Mar. 27, 2019) in support. As a primary matter, the cases cited by Defendant are not binding on this Court and are distinguishable. In *Emazing Lights*, the plaintiff's trade secret definition in the complaint included highly specific language, such as source code and firmware for named products. *Emazing Lights LLC v. De Oca*, 2016 WL 3658945, at *2 (C.D. Cal. Jan. 7, 2016). However, the definition began with the phrase "include, but are not limited to," and closed with the phrase "and any other information not publically [sic] and widely known . . . ." *Id.* The court found that this phrasing created "unlimited reach" not present in any other accepted trade secret definitions. *Id.* Here, Plaintiff's Trade Secret definition does not contain this unlimited language. Therefore, *Emazing Lights* is not instructive.

*Acrisure* is distinguishable because the definition of trade secrets there included

24-cv-2439-BJC-JLB

broad references to categories of information that did not give an indication of "what *specific* programs, projects, or contracts are at issue." 2019 WL 4137618 *3 (emphasis in original). Although the definition of trade secrets in *Acrisure* contained some of the same categories of information as contained in Plaintiff's definition of trade secrets, such as customer contact lists, the remainder of the categories of information were broader than the definition here. Therefore, Defendant's reliance on *Acrisure* misses the mark.

The Trade Secrets and CP Information definitions contain some items that are not specific enough to constitute trade secrets for purposes of the present motion. Included in these categories are: "marketing, advertising and lead-generations strategies," which do not aid Defendants in distinguishing these items from "matters of general knowledge within the parties' industry . . . ." *See CleanFish*, 2020 WL 1274991, at *9. These are "broad categories that would be applicable to any business." *Id.* While not required to spell out the details of its marketing and advertising strategies, the FAC does not allege a trade secret in these categories because it does not specify anything about the strategies it claims were stolen. *See Mattel*, 782 F. Supp. 2d at 967 ("the concept of projecting sales through market research and communication within the company is general, intuitive, and without dispute derives no independent economic value from its secrecy"); *Masimo Corp. v. Apple Inc.*, 2020 WL 4037213, at *5 (C.D. Cal. June 25, 2020) (holding that a plaintiff failed to plead a trade secret when it employed broad references to product plans, briefs and technical drawings, "without reference to specific plans, briefs, or drawings").

However, the insufficiency of these categories does not invalidate the finding that Plaintiff has sufficiently asserted protectable trade secrets and the definition is sufficient to survive the notice pleading standard. *See Nextdoor.Com*, 2013 WL 3802526, at *5-6. Accordingly, Plaintiff has satisfied the first element of a misappropriation of trade secrets claim, i.e. that Plaintiff possessed a trade secret. *InteliClear, LLC,* 978 F.3d at 657.

Plaintiff has also sufficiently alleged the second element of a trade secret misappropriation claim by asserting that Bernier accessed, copied, and deleted Canter's CP Information and Trade Secrets. ECF No. 15 at ¶ 64. For instance, Plaintiff asserts that

24-cv-2439-BJC-JLB

"[o]n October 14 and 22, 2024, Bernier "accessed CP Information and Trade secrets concerning certain client tax analyses and printed them out — Canter's forensic investigation has confirmed that Bernier has retained and continues to use them." *Id*. ¶75.

The third element is satisfied because Plaintiff asserts that it suffered damage due to Bernier's use of the misappropriated "CP Information and Trade Secrets he took from Canter to acquire Canter's clients and unfairly compete with Canter." *Id.* ¶ 83.  Plaintiff further alleges that Bernier harmed Plaintiff's reputation in the industry and goodwill among clients and prospective clients "[b]y not sending clients [] complete reports and resigning from Canter," creating "the impression for such clients that Canter was not a worthy investment adviser." *Id.* ¶ 99.

Plaintiff has thus advanced a sufficiently pled trade secret misappropriation claim at this stage in the pleadings. Accordingly, Defendants' motions to dismiss as to this claim are **DENIED**.

### B. Breach of Contract

A claim for breach of contract requires a plaintiff to allege the following: "(1) the [legally enforceable] contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (1990).

Under California law, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600. However, "a former employee may be barred from soliciting existing customers to redirect their business away from the former employer and to the employee's new business *if the employee is utilizing trade secret information* to solicit those customers." *Retirement Grp. v. Galante*, 176 Cal. App. 4th 1226, 1237 (2009) (emphasis in original).  Thus, a non-solicitation agreement that covers both trade secret and non-trade secret information is enforceable if it prevents an employee from using trade secret information to solicit existing customers. *See VibrantCare Rehab., Inc. v. Deol*, 2021 WL 1614692, at *5 (E.D. Cal. Apr. 26, 2021) ("§ 16600's 'to that extent void' language

24-cv-2439-BJC-JLB

evidences the legislature[']s intent to sever invalid portions of contracts." (emphasis in original)); *Hiossen, Inc. v. Kim*, 2016 WL 10987365, at \*12 (C.D. Cal. Aug. 17, 2016) (invalidating some provisions of a confidentiality agreement that did not rely on trade secrets while enforcing those that did).

Here, Defendant Bernier contends that the breach of contract claim is insufficient for two reasons: (1) the Non-Solicitation Agreement is void under California Business & Professions Code section 16600 because it goes beyond the allowable "bounds of protecting Plaintiff's trade secrets[;]" and (2) the Employment Agreement is void because it includes the Non-Solicitation Agreement and a Buyout clause, which are impermissible restraints on trade.  ECF No. 17-1 at 9.

*1. Legally Enforceable Contract*

To satisfy the first prong, Plaintiff must sufficiently plead the existence of an enforceable contract.

The Court looks to the language of the Agreement to determine its enforceability.[1] The Confidentiality Agreement clearly states that employees "will not use any of Canter's *trade secrets and/or confidential* or proprietary information to directly or indirectly solicit the Clients of Canter, or to interrupt, disturb, or interfere with the relationships of Canter with its Clients."  ECF No. 15-2 at 1(emphasis added).  Employees are prohibited for one year following termination from using "*trade secret information and/or confidential* or proprietary information" to recruit other Canter employees.  *Id.* (emphasis added).

Here, the agreement is enforceable insofar as it prohibits employees from using trade-secret information to solicit clients from Canter.  Defendant Bernier acknowledges that "a restriction as to trade secrets is appropriate" but argues that Plaintiff lists trade

---

[1] Because the Complaint incorporates by reference the Confidentiality Agreement, the Court may properly consider it in this Rule 12(b)(6) challenge "without converting the motion to dismiss into a motion for summary judgment."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

24-cv-2439-BJC-JLB

secrets as an alternative to confidential information, thereby rendering the provisions—and possibly the entire contract—unenforceable due to its overbreadth.  ECF No. 17-1 at 10-11.  However, these provisions are enforceable where they are limited to protecting trade secrets. See *VibrantCare*, 2021 WL 1614692, at *5; Cal. Bus. & Prof. Code § 16600.

Conversely, the Agreement is not enforceable regarding the use, disclosure, copying, or removal of non-trade secret information for the solicitation of Plaintiff's clients or employees.  Accordingly, Plaintiff has satisfied the first element of a breach of contract claim: a valid contract.[2]

*2. Performance and Breach*

Plaintiff has satisfied the second element because he claims, and Bernier does not dispute, that Plaintiff has performed, or substantially performed, all of its obligations under the contract. ECF No. 15 ¶ 169.  Additionally, Plaintiff satisfied the third element because he sufficiently alleges Defendant breached the Confidentiality Agreement in the following ways: (1) disclosing trade secrets to LPL and other third parties, *Id.* ¶ 163; (2) copying, retaining, and removing trade secrets, *Id.*; (3) using trade secrets to solicit clients, *Id.* ¶ 165; (4) using trade secrets to solicit employees from Plaintiff, *Id.* ¶ 167.

*3. Damages*

As to the fourth element,  Plaintiff claims to have suffered damages directly due to Defendants' conduct, including "the loss of certain confidential information and trade secrets deleted by Bernier, loss of client relationships and revenue, loss of goodwill, loss of reputation, as well as damages sustained in connection with identifying, investigating, [and] attempting to remedy the harm inflicted by Bernier." *Id.* ¶ 171.  These allegations satisfy the fourth element of a breach of contract claim because they arise from the use or

---

[2] Further, Plaintiff may continue to assert a claim that Defendant Bernier deleted files in violation of the Employment Agreement because that allegation is unrelated to restraining trade.

24-cv-2439-BJC-JLB

removal of Plaintiff's trade secrets or from the solicitation of clients or employees using trade secrets which are enforceable portions of the agreement.[3]

As set forth above, Defendants' motions to dismiss Plaintiff's breach of contract claim are **GRANTED** in part and **DENIED** in part.

### C. Preemption

Common law claims such as misappropriation, conversion, and unjust enrichment can be preempted by CUTSA if the claims are based upon the same facts underlying claims for misappropriation of a trade secret. *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010) (quoting Cal. Civ.Code § 3426.7). The underlying aim of CUTSA is "to make uniform the law with respect to the subject of [trade secrets] among states enacting it." *Id.* "CUTSA includes a preemption provision that displaces common law and statutory theories of recovery to the extent that they are predicated on the same facts upon which one could assert a claim for misappropriation of trade secrets." *Spring Design, Inc., v. Barnesandnoble.com, LLC,* 2010 WL 11607095, *2 (N.D. Cal. April 8, 2010); *Gabriel Techs. Corp. v. Qualcomm Inc.,* 2009 WL 3326631, at *11 (S.D. Cal. Sept. 3, 2009)("Courts have held that where a claim is based on the 'identical nucleus' of facts as a trade secrets misappropriation claim, it is preempted by CUTSA"); Cal. Civ. Code § 3426.7. Common law claims that arise from "a wrongful taking of information that does not qualify as a trade secret" can also be superseded if the plaintiff does not identify a law protecting the rights." *Heller v. Cepia, LLC*, 2012 WL 13572, *7 (N.D. Cal. Jan. 4, 2012). To survive preemption, Plaintiff's claims must "allege wrongdoing that is materially

---

[3] Defendant Bernier argues in the alternative that the buyout provision of his employment agreement is a de facto restraint on trade that renders the entire contract unenforceable under § 16600. ECF No. 17-1 at 13. However, the buyout provision itself is not the basis of Plaintiff's breach of contract claim. Moreover, if the buyout provision is unenforceable or illegal under § 16600, it could be severed with no effect on the provisions of the contract in dispute. See *VibrantCare*, 2021 WL 1614692, at *12.

24-cv-2439-BJC-JLB

distinct from the wrongdoing alleged in a CUTSA claim." *SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 WL 6160472, at *9 (N.D. Cal. Dec. 11, 2012). "If the plaintiff identifies no property right outside of trade secrets law, then he has no remedy outside that law, and there is nothing unsound or unjust about holding other theories superseded." *Silvaco*, 184 Cal. App. 4th at 239.

Defendants contend that CUTSA preempts causes of action 4-11 of the FAC, which cover all non-misappropriation claims except for breach of contract.[4]  Plaintiff responds that (1) each of the non-trade secret claims is based on independently actionable conduct, such as the misappropriation of confidential information, and (2) preemption should not be decided on a motion to dismiss because it is a fact based inquiry, citing *Genasys Inc. v. Vector Acoustics, LLC*, 638 F. Supp. 3d 1135, 1155 (S.D. Cal. 2022), *Amron Int'l Diving Supply, Inc. v. Hydrolinx Diving Commc'n, Inc.*, 2011 WL 5025178, at *10 (S.D. Cal. Oct. 21, 2011), *DJO Global Inc. v. Glader*, 2016 WL 11622009, *6 (S.D. Cal. Dec. 22, 2016), and *Bryant v. Mattel, Inc.*, 2010 WL 3705668, at *22 (C.D. Cal. Aug. 2, 2010).  ECF No. 23 at 27-31.

As a primary matter, the preemption issue may be decided on a motion to dismiss. The cases cited by Plaintiff to the contrary are not binding and do not support Plaintiff's position. For instance, in *Genasys Inc.*, the plaintiff failed to plead a trade secret, so the question of preemption was deferred until one was pled. 638 F. Supp. 3d at 1155. Therefore, this Court follows many other courts that have determined questions of preemption on a motion to dismiss. *See MedImpact,* 2020 WL 5064253, *16. Accordingly, the Court considers whether causes of action 4-11 rest on factual allegations that are the

---

[4] The breach of contract claim is not preempted because CUTSA states that contractual remedies are not affected. Cal. Civ. Code § 3426.7(b)(1); *Farmers Ins. Exch.*, 2013 WL 3872950, at *3.

same as those underlying the misappropriation of trade secrets claims and are preempted by CUTSA.[5]

Here, Claims 4 and 5 are preempted to the extent they are based on the use of trade secrets and confidential information to solicit clients, but they are not preempted regarding allegations that Bernier deleted confidential information, intentionally interfered with contracts and prospective economic advantages, sabotaged client accounts, and solicited clients because the facts underlying these assertions are materially different from the misappropriation of trade secrets.

Claim 6 for tortious interference with contractual relations is preempted in its entirety because Plaintiff simply alleges that Bernier "[used] Canter's CP Information to induce clients to leave Canter and follow Bernier to LPL," which is "no more than a restatement of the same operative facts" of the trade secrets claim. *See Gabriel Techs.,* 2009 WL 3326631, at *11.

Claim 7 for breach of fiduciary duty and Claim 8 for breach of the duty of loyalty are not preempted to the extent they allege Bernier "prepar[ed] improper or misleading investment reports to send to Canter's clients[,]" and "[deleted] Canter's files from its internal file and data systems . . . ." ECF No. 15 ¶ 201, 203, 208. But they are preempted where they rely on factual allegations that are the same as those supporting the misappropriation claims. *See SunPower*, 2012 WL 6160472, *6-7.

Claim 9, asserting violations of California Penal Code § 496, is preempted because it is based on the same common factual nucleus as the CUTSA claim. See *ATS Prods., Inc.*

---

[5] As noted above, claim 4 alleges engagement in unlawful, unfair, and fraudulent business acts in violation of California Business and Professions Code § 17200 ("Section 17200"); Claim 5 alleges intentional interference with prospective economic advantage; Claim 6 alleges tortious interference with contractual relations; Claim 7 alleges breach of fiduciary duty; Claim 8 alleges breach of the duty of loyalty; Claim 9 alleges refusal to return stolen property in violation of California Penal Code § 496; Claim 10 alleges unauthorized access to Defendant's digital data in violation of California Penal Code § 502; and Claim 11 alleges conversion.

*v. Champion Fiberglass, Inc.*, 2015 WL 224815, at *2 (N.D. Cal. Jan. 15, 2015) (discussing preemption of claims under Section 496)

Plaintiff alleges that Defendant Bernier "misappropriated Canter's CP Information by deleting it, downloading, copying, and removing it from Canter's premises and internal systems[,]" and further has "refused or failed to return Canter's property . . . ."  ECF No. 15 ¶¶ 214.

Claim 10, asserting violations of California Penal Code § 502, is preempted in part because it is based on allegations that Bernier "knowingly, and without permission, access[ed] Canter's data, software, computer and/or computer systems.  *Id.* at ¶ 220.  As with common law claims, Section 502 claims can be preempted if they are based on the "same common factual nucleus" as a misappropriation claim. *Movement Mortg., LLC v. Scrima*, 2024 WL 3011202, at *5 (E.D. Cal. June 11, 2024) (discussing preemption of claims under Section 502); Cal. Civ. Code § 3426.7(b) ("This title does not affect . . . criminal remedies, whether or not based upon misappropriation of a trade secret.").  The portion of Claim 10 related to the deletion of files is not preempted because it is more than a mere recitation of the facts of the CUTSA claim.  Specifically, Plaintiff alleges a violation of Section 502(c)(5), which addresses the denial of access to an authorized user.  Plaintiff appears to be alleging that, due to the deletion of its files, authorized users were unable to access information to which they had a right of access.  However, the portion of the Section 502 claim that is predicated on the *copying* of data, as opposed to its deletion, is preempted by CUTSA for the same reasons as the Section 496 claim is preempted.

Claim 11 for conversion is not preempted because Plaintiff alleges that Defendants "substantially interfered with Canter's property, including its CP Information, by intentionally and knowingly deleting CP Information."  Here, Plaintiff does not appear to rely on the misappropriation of the trade secrets information in alleging conversion.  Therefore, this claim is not preempted.

In summary, the Court finds that Claim 6 for tortious interference with contractual relations and Claim 9 for violation of Cal. Pen. Code § 496 are preempted in their entirety.

Further, the following claims are preempted in part, insofar as they rely on the same factual underpinnings of the misappropriation claims: Claim 4 for violation of Cal. Bus. & Prof. Code § 17200; Claim 5 for intentional interference with prospective economic advantage; Claim 7 for breach of fiduciary duty; Claim 8 for breach of the duty of loyalty; and Claim 10 for violation of Cal. Pen. Code § 502.  Claim 11 for conversion is not preempted. Therefore, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motions to Dismiss for preemption.

### D. Defendant Bernier's Other Arguments for Dismissal

Bernier's final three arguments for dismissal are as follows: (1) Plaintiff fails to plead causation for Claims 4, 5, 7, and 8; (2) Plaintiff fails to allege intentional misconduct necessary for Claim 5; and (3) Claim 8 fails as a matter of law because it relates to Bernier's right to secure alternative employment. The Court considers the portions of each claim that have not been preempted by CUTSA.

First, Defendant Bernier asserts that the claims for unfair business practices, intentional interference with prospective economic advantage, and breach of fiduciary duty or the duty of loyalty each require that the alleged misconduct be the cause of a disruption in a client relationship.  ECF No. 17-1 at 20.  Bernier argues that, after omitting the conduct involving misappropriation, the only remaining allegations are the ones regarding sabotage using inaccurate reports.  *Id.* at 21.  Bernier implies that this allegation is not reasonable enough to meet the pleading standards of *Twombly* and *Iqbal*.  However, as pled in the FAC, Claims 4, 5, 7, and 8 are not merely based on the sabotage allegations, but also on the allegations regarding the deletion of files.  Accepting these allegations as true for purposes of the present motion, the Court finds that Plaintiff has sufficiently pled causation for the damages individually alleged under each claim.  ECF No. 15 ¶¶ 179, 189, 204, 209. On a motion to dismiss, Plaintiff needs only plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Here, the Court finds the facts sufficient for such inference.

24-cv-2439-BJC-JLB

Second, Bernier asserts that Plaintiff provides insufficient facts for the Court to infer an intentional act for the tort of intentional interference with prospective economic advantage.  ECF No. 17-1 at 22.  On the contrary, Plaintiff alleges that Bernier: (1) "on multiple occasions, excluded the probability of success page from reports for clients whose projected returns indicated a lack of profitability;" (2) "sent reports to clients that had incorrect or missing data;" (3) "failed to send any report to many other clients who should have received them;" (4) "destroyed some of [Canter's CP] information as Canter has not been able to recover at least some of the files."  ECF No. 15 ¶¶ 96-98, 229.  The Court finds that both the claims asserting that Bernier undermined Plaintiff's reputation and the deletion allegations in the FAC are sufficient to infer an intentional act. *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1152 n.6 (2004) ("[A] plaintiff must plead and prove . . . the defendant's intentional acts designed to disrupt the relationship . . . .") Similarly, Plaintiff's claims that Bernier provided incomplete reports to clients are pled with sufficient particularity to state a plausible claim that this was done with the purpose of harming Canter's reputation.  *See Iqbal*, 556 U.S. at 678.

Third, Bernier asserts that Plaintiff's breach of loyalty claim fails as a matter of law because its allegations go no further than making preparations for new employment.  ECF No. 17-1 at 23.  A breach of the duty of loyalty requires action going beyond "seeking other employment or making preparations to create a competitive corporation to compete with his or her employer." *Youngevity Int'l v. Smith*, 2018 WL 4691272, * (S.D. Cal. Sept. 28, 2018).  Here, however, the claims asserting "sabotage" and deletion of data go far beyond mere preparation and are "inimical to the best interests of the employer." *See Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 295 (1995).  Therefore, Plaintiff's breach of loyalty claim is sufficient to state a claim that is plausible on its face.  For the foregoing reasons, the Court **DENIES** Defendants' motions to dismiss any claims due to issues of causation, inference of an intentional act, or failure as a matter of law.

//

//

17

24-cv-2439-BJC-JLB

### E. Failure to Allege Wrongdoing by Defendant LPL

Defendant LPL additionally argues that Plaintiff has failed to allege any wrongdoing against it. ECF No. 18-1 at 3-6. Plaintiff responds that the allegations are sufficient to meet the notice pleading standard because a basis for its allegations is inferable through circumstantial evidence. ECF No. 24 at 10. The Court agrees with Plaintiff that the allegations are sufficient to survive a motion to dismiss. In attempting to meet the *Iqbal* pleading standard, a plaintiff is permitted to make allegations upon information and belief "where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F. 3d 910, 928 (9th Cir. 2017) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). However, "mere conclusory statements[] do not suffice" to support a claim. *Iqbal*, 556 U.S. at 678.

Plaintiff alleges that LPL knowingly participated in Bernier's use of trade secrets to steal Canter's clients and that LPL used trade secrets to recruit two employees of Canter. ECF No. 15 ¶¶ 83, 124. In support, Plaintiff asserts that Bernier's investment advisor registration was transferred to LPL the same day he resigned from Canter, which "could not have been accomplished without malice aforethought and knowing coordination." *Id.* ¶¶ 2, 57. He further claims that the speed with which Bernier's clients were transferred to LPL was much faster than the industry standard. *Id.* ¶ 59. Finally, Plaintiff states that LPL publicly announced its intent to take Bernier's clients from Canter. *Id.* ¶ 87.

Accepting these allegations as true and construing them in the light most favorable to Plaintiff, each of the allegations state a claim for relief that is plausible because of the circumstantial evidence alleged, thus putting Defendant LPL on notice of the claims against it. *See Starr*, 652 F.3d at 1216. Because further facts demonstrating LPL's potential involvement with Bernier's alleged misappropriation are "peculiarly within the possession and control of the defendant," Plaintiff's otherwise conclusory allegations are sufficiently supported by circumstantial evidence to allow the claims to proceed, despite Defendant LPL's argument to the contrary. *See Soo Park*, 851 F. 3d at 928.

24-cv-2439-BJC-JLB

## IV.    Conclusion and Order

For the foregoing reasons, the Court **GRANTS** Defendants' motions to dismiss Claims 6 and 9; **GRANTS IN PART AND DENIES IN PART** Defendants' motions to dismiss Claims 3, 4, 5, 7, 8, and 10; and **DENIES** Defendants' motion to dismiss Claims 1, 2, and 11. Plaintiff is **GRANTED** leave to amend its Complaint. Plaintiff may file a Second Amended Complaint **no later than June 30, 2026**.

**IT IS SO ORDERED**

Dated:  May 28, 2026

Honorable Benjamin J. Cheeks
United States District Judge

24-cv-2439-BJC-JLB